UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-114 |
| | § | |
| ROGELIO GARCIA | § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant Rogelio Garcia's (Garcia) Motion to Suppress Evidence (D.E. 16). Garcia is charged by indictment (D.E. 6) with one count of possessing with intent to distribute a controlled substance. He complains that the evidence against him was obtained in violation of the Fourth Amendment. The Government filed a response to the motion (D.E. 18), and the Court held a hearing on April 19, 2017. The Government has agreed not to offer, at trial, statements made by Garcia to agents of the Drug Enforcement Administration. After due consideration of the evidence and the arguments of the parties, the motion to suppress (D.E. 16) is DENIED.

### FACTS

On January 29, 2017, at about 2:35 p.m., a commercial bus arrived at the Falfurrias Border Patrol checkpoint. Garcia was a passenger on the bus. Buses are referred to a secondary inspection area so that agents can conduct an immigration inspection on each passenger. Border Patrol Agent Christian Gonzalez boarded the bus, introduced himself as a Border Patrol agent, and informed the passengers that he was going to conduct an immigration inspection. Agent Gonzalez has worked at the Falfurrias station for four years. He started at the front of the bus questioning passengers

and worked his way back.  When he came upon Garcia, who was seated in the center of the bus, Agent Gonzalez asked him if he was a United States citizen and Garcia said yes.  Agent Gonzalez asked for immigration documents and Garcia provided a Texas identification card.  The Agent asked Garcia if he had a driver's license and he said no.  The Agent asked why not and Garcia said he had not gotten one yet.  Agent Gonzalez noticed that Garcia's voice was shaky or trembling.

The Agent testified that fraudulent documents are sometimes provided so he continues with questions to verify citizenship.  He asked Garcia where he was coming from and where he was going.  Garcia said he was coming from Pharr, Texas, and going to Houston, Texas, to visit his father.  Garcia's voice continued to be shaky.  Garcia then dropped his phone.  After Agent Gonzalez asked him if he had dropped his phone and he said yes, the Agent noticed that Garcia got in a rigid posture and had a worried expression on his face—his eyes were wide open.  By this time, the questioning had gone on for about two minutes.

Because of Garcia's nervous behavior—shaky voice, worried expression, and rigid posture, Agent Gonzalez asked Garcia if he would consent to a pat down and Garcia said yes.  He then asked Garcia to exit the bus and once outside, the Agent again asked for permission to do a pat down and Garcia said yes.  The Agent patted him down and felt anomalies on his upper thighs, which were later determined to be bundles of cocaine.

The Agent testified that he had not completed the immigration inspection at the time he requested consent to do the pat down.  He determined that Garcia was a citizen after Garcia was arrested and the Agent reviewed his criminal record.

**DISCUSSION**

Garcia asserts two arguments in support of his motion to suppress: (1) the immigration inspection exceeded its permissible scope, and (2) his consent to the search was not voluntary.

**A. The Immigration Stop Was Not Impermissibly Prolonged**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; *see also United States v. Portillo-Aguirre*, 311 F.3d 647, 652 (5th Cir. 2002). Checkpoint stops "are 'seizures' within the meaning of the Fourth Amendment." *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976). However, the Supreme Court has found constitutional permanent immigration checkpoints where travelers are stopped and briefly questioned about their immigration status without individual suspicion. *Id.* at 566-67; *Portillo-Aguirre*, 311 F.3d at 652.

"The scope of an immigration checkpoint stop is limited to the . . . purpose of the stop: determining the citizenship status of persons passing through the checkpoint." *United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). The permissible duration of such a stop is the time reasonably necessary to determine citizenship status which includes the time necessary to inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention. *Id.* Courts should avoid scrutinizing the particular questions asked by a Border Patrol

agent during these brief stops "as long as in sum they generally relate to determining citizenship status." *Id.*

A stop may not exceed its permissible duration unless the agent has reasonable suspicion of other criminal activity and the stop may then be lengthened to accommodate its new justification. *Id*. at 434. An extended detention or search requires consent or probable cause. *Id*. (citing *Martinez-Fuerte*, 428 U.S. at 567). An immigration stop that exceeds its permissible scope violates the Fourth Amendment even if the extension is minimal. *Rodriguez v. United States*, 135 S. Ct. 1609, 1615-16 (2015).

Garcia argues that the Agent should have been satisfied that Garcia was a United States citizen when he said so and produced an identification card. And the additional questions by the Agent did not relate to the document produced. Thus all questions after Garcia produced the identification card exceeded the permissible scope of the immigration inspection.

The Court finds that Agent Gonzalez's questions related to Garcia's citizenship, documents proving citizenship, and his travel plans and thus were within the scope of an immigration stop. Further, the Court finds that the questioning was brief, about two minutes. Based on Garcia's nervous behavior, the Agent developed reasonable suspicion of criminal activity and then requested and received permission to pat down Garcia. The Court finds that the immigration checkpoint stop was not impermissibly prolonged. The motion to suppress is denied in this respect.

**B. The Consent to Search Was Voluntary**

A warrantless search by police constitutes a violation of the Fourth Amendment and is invalid unless it falls within one of the recognized exceptions to the Constitution's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946))). "In order to satisfy the consent exception, the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).

Voluntariness is a factual determination that courts must decide from the totality of the circumstances. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). There are six factors that courts consider when determining whether consent was voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* (quoting *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)). Although all of the factors are highly relevant, no one of them is dispositive. *Id.*

Garcia argues that his consent was not given voluntarily. However, the evidence demonstrates that the consent was voluntary. Garcia's custodial status was an involuntary immigration stop. He was fully cooperative with the Agent and there is no

evidence of any coercion. The record is silent regarding Garcia's education or intelligence, or whether Garcia was aware of his right to refuse consent. However, "[p]roof of knowledge of the right to refuse consent is not required to show voluntariness." *United States v. Davis*, 749 F.2d 292, 296 (5th Cir. 1985) (citing *Schneckloth*, 412 U.S. at 249). There is no evidence whether Garcia believed no incriminating evidence would be found, but based on the circumstances, it is likely that he believed the contraband would be found if he was searched. Based on the totality of the evidence, the Court finds that the Government has satisfied its burden of showing that Garcia's consent was voluntary.

## CONCLUSION

For the reasons set forth above, Garcia's motion to suppress (D.E. 16) is DENIED.

ORDERED this 24th day of May, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE